UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| ARCADIAN HEALTH PLAN, INC., | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | No. 1:10-cv-322-GZS |
| MILA KORFMAN, et al., | ) | |
| Defendants | ) | |

## RECOMMENDED DECISIONS ON MOTIONS FOR PRELIMINARY INJUNCTION AND TO DISMISS

The plaintiff, Arcadian Health Plan, Inc., seeks a preliminary injunction against the individual defendant, the superintendent of the Maine Bureau of Insurance, and the Bureau itself, contending that the administrative proceeding against it pending before the Bureau is preempted by federal law. Motion for Preliminary Injunction ("PI Motion") (Docket No. 4) at 1. The defendants seek dismissal of the action. Defendant Maine Bureau of Insurance's Objection to Arcadian Health Plan, Inc.'s Motion for a Preliminary Injunction and Cross-Motion to Dismiss the Complaint ("Motion to Dismiss") (Docket Nos. 10 & 11) at 6-18.[1] Both motions are based upon interpreting the doctrine of preemption; that is, the plaintiff contends that the state statutory and regulatory authority pursuant to which the defendants are investigating it are preempted by federal statute, and the defendants contend that they are not. Because the legal analysis for both motions, therefore, is identical, my analysis will be applicable to both motions.

---

[1] After the plaintiff amended its complaint to add the superintendent as a defendant (Docket No. 12), the defendants filed a new motion to dismiss the amended complaint (Docket No. 20), incorporating by reference the arguments made in the initial motion to dismiss filed by the Bureau. Because the arguments presented in the two motions are identical, I will refer to the initial motion throughout this recommended decision, but my recommendations apply equally to the second motion to dismiss.

1

I recommend that the court grant the Bureau's motion to dismiss, deny the superintendent's motion to dismiss, and grant the plaintiff's motion for preliminary injunction to the extent that it seeks injunctive relief against the superintendent.

## I. Factual Background

The complaint[2] includes the following relevant factual allegations.

The plaintiff holds a Maine health maintenance organization license issued by the defendant Bureau. Complaint (Docket No. 1) ¶ 5. It provides health insurance plans under the federal Medicare Advantage ("MA") program. *Id.* ¶ 7. The Centers for Medicare and Medicaid Services, an agency within the federal Department of Health and Human Services, administers the MA program and regulates the practices employed and the materials used in the marketing of MA plans. *Id.* ¶¶ 6, 9.

On or about June 2, 2010, the Bureau's staff filed a petition for enforcement with the defendant superintendent of insurance, captioned *In re Arcadian Health Plan, Inc.*, Docket No. INS-10-216, seeking the imposition of disciplinary sanctions on the plaintiff based on allegations that the materials and practices used by two of the plaintiff's agents ("producers") to market its MA plans violate certain provisions of the Maine Insurance Code. *Id.* ¶¶ 10-11.

The plaintiff seeks a declaratory judgment to the effect that the defendants' pursuit of this administrative action violates federal law and regulations and an injunction barring any further action on the petition. *Id.* at 3-4. The defendants seek dismissal of the action.

---

[2] The plaintiff's amended complaint, Docket No. 12, is identical to the plaintiff's initial complaint save for the addition of the superintendent as a defendant.

## II. Applicable Legal Standards

The party moving for a preliminary injunction bears the burden of satisfying each element of a familiar four-part test: (1) it must be likely to succeed on the merits; (2) it must suffer from immediate irreparable injury without injunctive relief; (3) it must balance the equities, *i.e.,* the harm to the moving party in the absence of an injunction must exceed the harm to the opposing party if the injunction is granted; and (4) the public interest must be better served by granting the injunction than by denying it. *Everett J. Prescott, Inc. v. Ross*, 383 F.Supp.2d 180, 188 (D. Me.), *amended on other grounds*, 390 F.Supp.2d 44 (D. Me. 2005). The court must "bear constantly in mind that an '[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case.'" *Saco Def. Sys. Div., Maremont Corp. v. Weinberger*, 606 F. Supp. 446, 450 (D. Me. 1985) (quoting *Plain Dealer Pub. Co. v. Cleveland Typographical Union No. 53*, 520 F.2d 1220, 1230 (6th Cir. 1975)).

The motion to dismiss invokes Fed. R. Civ. P. 12(b)(1) and (6). Motion to Dismiss at 1. When a defendant moves to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of demonstrating that the court has jurisdiction. *Aversa v. United States,* 99 F.3d 1200, 1209 (1st Cir. 1996). The moving party may use affidavits and other matter to support the motion, while the plaintiff may establish the existence of subject-matter jurisdiction through extra-pleading material. 5B C. Wright & A. Miller, *Federal Practice and Procedure*, § 1350 at 159-60 (3d ed. 2004); *see also Aversa*, 99 F.3d at 1210; *Hawes v. Club Ecuestre el Comandante*, 598 F.2d 698, 699 (1st Cir. 1979) (question of jurisdiction decided on basis of answers to interrogatories, deposition statements, and an affidavit).

With respect to Rule 12(b)(6), as the Supreme Court has clarified:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).[3]

"In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Id*. "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted).

When a court is confronted with motions to dismiss under both Rule 12(b)(1) and 12(b)(6), it ordinarily should decide the former before considering the latter. *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 149 (1st Cir. 2002).

### III. Analysis

#### A. Preliminary Injunction

The plaintiff argues that 42 U.S.C. § 1395w-26(b) "expressly preempted" all state laws and regulations relating to MA plans "with the exception of those pertaining to licensing and plan insolvency." PI Motion at 2. That statutory subsection provides, in relevant part:

---

[3] In so explaining, the Court explicitly backed away from the Rule 12(b)(6) standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968 (quoting *Conley*, 355 U.S. at 45-46). The Court observed: "[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1969.

> **(1) In general**
>   The Secretary shall establish by regulation other standards (not described in subsection (a)) for Medicare + Choice organizations and plans consistent with, and to carry out, this part. The Secretary shall publish such regulations by June 1, 1998. . . .
> * * *
> **(3) Relation to State laws**
>   The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part.

42 U.S.C. § 1395w-26(b)(1) & (3).

For the purposes of the pending motions, there is no dispute that the plaintiff is an MA organization within the meaning of this statute.

The defendants' enforcement action is taken pursuant to 24-A M.R.S.A. §§ 1445(1)(D), 2152 and 2152-B. Petition for Enforcement, Docket No. 10-2, at 3-4. Those sections of the Maine Insurance Code provide:

> In addition to any other applicable provisions of law, the insurer . . .:
> * * *
> **D.** Is accountable and may be penalized by the superintendent, as provided for in this Title, for the actions of its producers.

**24-**A M.R.S.A. § 1445(1)(D).

> No person shall engage in this State in any trade practice which is defined in this chapter, as, or determined pursuant to this chapter, to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance. . . .

24-A M.R.S.A. § 2152.

> **1. Definitions.** As used in this section, unless the context otherwise indicates, the following terms have the following meanings.
>
> **A**. "Cold lead advertising" means making use directly or indirectly of a method of marketing that fails to disclose in a conspicuous manner that a purpose of the marketing is insurance sales solicitation and that contact will be made by an insurance producer or insurance company.

>   **B.** "Medicare products" includes Medicare Part A, Medicare Part B, Medicare Part C, Medicare Part D, Medicare Advantage and Medicare supplement plans.
>
>   **2. Unfair solicitation methods**. It is an unfair trade practice under this chapter for an insurer or producer to:
>
>   **A.** Sell, solicit or negotiate the purchase of health insurance in this State through use of cold lead advertising;
>
>   **B.** Use an appointment that was made to discuss Medicare products or to solicit the sale of Medicare products in order to solicit sales of life insurance, health insurance or annuity products unless the consumer requests such solicitation and the products to be discussed are clearly identified to the consumer in writing at least 48 hours in advance of the appointment; and
>
>   **C.** Solicit the sale of Medicare products door-to-door prior to receiving an invitation from a consumer.

24-A M.R.S.A. § 2152-B.

The plaintiff contends that the following federal statutes and regulations preempt the cited Maine statutes:

>   **(1) Submission**
>   No marketing material or application form may be distributed by a Medicare + Choice organization to (or for the use of) Medicare + Choice eligible individuals unless –
>   **(A)** at least 45 days . . . before the date of distribution the organization has submitted the material or form to the Secretary for review, and
>   **(B)** The Secretary has not disapproved the distribution of such material or form.
>
>   **(2) Review**
>   The standards established under section 1395w-26 shall include guidelines for the review of any material or form submitted and under such guidelines the Secretary shall disapprove (or later require the correction of) such material or form if the material or form is materially inaccurate or misleading or otherwise makes a material misrepresentation.

42 U.S.C. § 1395w-21(h).

The following prohibited activities are described in this paragraph:

**(A) Unsolicited means of direct contact**
Any unsolicited means of direct contact of prospective enrollees, including soliciting door-to-door or any outbound telemarketing without the prospective enrollee initiating contact.

**(B) Cross-selling**
The sale of other non-health related products (such as annuities and life insurance) during any sales or marketing activity or presentation conducted with respect to a Medicare Advantage plan.

42 U.S.C. § 1395w-21(j).

Regulations promulgated under these statutes include those setting requirements for Medicare Advantage marketing materials, 42 C.F.R. § 422.2264, and listing marketing activities in which MA organizations may not engage, 42 C.F.R. § 422.268.

### 1. *Likelihood of Success*

#### a. *The Merits*

Facially, these federal statutes and regulations appear to regulate the same activity as do the state statutes involved in the current investigative proceeding being conducted by the defendants. "[W]hen Congress has unmistakably ordained that its enactments alone are to regulate a part of commerce, state laws regulating that aspect of commerce must fall." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977) (internal punctuation and citation omitted). This is not a case of implied preemption; section 1395w-26(b)(3) expressly creates the preemption at issue. Where there is a question about the scope of a statute's preemptive effect, courts look to the congressional purpose, "as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996).

Here, the defendants first argue that there is no preemption because their administrative proceeding involves only "a charge of vicarious liability for the producers' violations of" deceptive marketing laws, rather than a direct charge of violation, a "distinction [that] is not mere semantics." Motion to Dismiss at 12-13. They assert that 24-A M.R.S.A. § 1445 is the only relevant state statute for purposes of a preemption analysis of the current administrative proceeding, and that that statute merely "seeks to require insurers to take care to appoint and maintain ethical, law-abiding insurance producers[,]" which clearly differs from the purpose of the federal statutory scheme at issue. *Id*. at 13. There are no federal standards governing producer conduct, they note. *Id*.

However, it is the insurer, and not its producers, that is being subjected to an administrative proceeding in this case, alleging "violations of the Maine Insurance Code involving the soliciting of Medicare Advantage health plans." Petition for Enforcement at 1. If the state wishes to police the activities of MA insurance producers, whom it licenses, 24-A M.R.S.A. §§ 1441-A, 1443-A(2) & 1444, it can do so directly, 24-A M.R.S.A. § 1417, presumably without running afoul of the federal preemption statute at issue.

By choosing to regulate MA insurers, albeit indirectly through their producers, with respect to areas addressed by the federal MA standards, the state does not escape federal preemption. If it could do so here, any state could choose by artful legislating to ignore the federal standards, thereby creating the very situation that the doctrine of federal preemption is intended to avoid: MA marketing materials reviewed by the federal government and found to be acceptable could nonetheless be deemed violative of one or more states' MA marketing statutes and regulations. *Uhm v. Humana, Inc.*, 620 F.3d 1134, 1152 (9th Cir. 2010). It is, after all, not

the *method* of achieving the aim of a statutory scheme that is preempted; it is the *substance* of the federal and state schemes that must be compared.

The defendants employ a similar end-run strategy with their second argument; they assert that the state statutes at issue are "laws of general applicability," which are not subject to preemption, rather than laws "with respect to" MA plans. Motion to Dismiss at 14-17. This is a difficult argument to comprehend, given that one of the state statutes at issue is applicable by its terms only to sales of Medicare products. 24-A M.R.S.A. § 2152-B. The defendants' argument ignores this statute and focuses, as does its first argument, on the statute making insurers vicariously liable for violation of this statute, and others, by its producers. Motion to Dismiss at 15-16. Even section 1445(1)(D), the vicarious liability statute, however, is not a "law of general applicability" for purposes of preemption analysis.

In the only authority cited by the defendants in support of their position on this issue, Motion to Dismiss at 14, the California Court of Appeal for the Fourth District noted in an unpublished opinion that the state statutes claimed by the defendants in that case to be preempted by 42 U.S.C. § 1395w-26(b)(3) did not refer to an MA plan, "nor is the existence of an MA plan an element of these claims." *Bennett v. Pacificare Health Sys., LLC*, No. E043375 (Super.Ct. No. RCVRS094786), 2008 WL 4839522, at *7 (Cal.App. 4 Dist. Nov. 10, 2008). Here, the existence of an MA plan is an element of the claims against the defendants. Even a facially neutral state law, if section 1445(1)(D) can be so characterized, "can be preempted as applied[,]" *id*., and that is the case here, where the defendants are challenging the way the plaintiff's producers market the plaintiff's MA plans. Unlike the defendants in *Bennett*, the defendants here challenge practices that are "unique to an MA organization." *Id*.

9

In addition, *Bennett* makes clear that a "law of general applicability," which cannot be preempted, applies generally to all, like traffic rules, *id*. at *4, or state tort or contract law, *id*. at *7-*8 (distinguishing common law from state statutes enacted by legislators or regulations promulgated by state officials, the latter being what Congress intended to preempt). *See, e.g., In re Lupron® Marketing & Sales Practices Litig.*, 295 F.Supp.2d 148, 179 (D. Mass. 2003) (laws of general applicability that are not preempted by federal statutory preemption of claims "related to" certain field are those that have "merely a tenuous, remote, or peripheral connection" with that field). Even section 1445(1)(D) cannot be said to have "merely a tenuous, remote, or peripheral connection" with MA plans, as it is applied in the defendants' administrative proceeding. *See also Uhm*, 620 F.3d at 1150 n.25 (nothing in section 1395w-26(b)(3) "suggests that a state law or regulation must apply *only* to a P[rescription] D[rug] P[lan] in order to constitute a law 'with respect to' a PDP."). The point of the state statutes that provide the substantive basis for the pending administrative action against the plaintiff is the regulation of marketing materials concerning MA plans, which is the point of the preempting federal statutes and regulations.

The defendants next contend that the state laws invoked by their administrative action against the plaintiff are licensing laws, which are not preempted by the terms of the federal statute. Motion to Dismiss at 17-18. This position, however, is based on the assumptions that only section 1445(1)(D) is at issue in their administrative action and that section 1445(1)(D) is a law that "producers must comply with to maintain their license[s.]" *Id*. at 17. First, section 1445(1)(D), by its terms, applies to insurers, not producers, and the substantive statute allegedly violated, 24-A M.R.S.A. § 2152-B, applies to both insurers and producers. Neither statute is a "State licensing law" as that term is used in 42 U.S.C. § 1395w-26(b)(3). Licensing laws for

insurers operating in Maine are found at 24-A M.R.S.A. §§ 1411-19. Section 1445 does not mandate loss of an insurer's license as a penalty for any forbidden actions by its producers. To interpret 24-A M.R.S.A. § 2152-B as a "licensing law" would mean that all state statutes and regulations directed at insurers would be exempt from the federal preemption intended by Congress in section 1395w-26(b)(3), and that in turn would render the preemption provision in the statute meaningless.

I conclude that, as to the first and "most important" of the four elements of entitlement to preliminary injunctive relief, *Jean v. Massachusetts State Police*, 492 F.3d 24, 27 (1st Cir. 2007), the plaintiff has shown a likelihood of success on the merits.

*b. Abstention*

The analysis of the plaintiff's likelihood of success on the merits does not end here, however. The defendants argue that this court's consideration of the plaintiff's claim is barred by the doctrine of abstention established by *Younger v. Harris*, 401 U.S. 37 (1971). Motion to Dismiss at 6-18. If abstention is required, it is highly unlikely that the plaintiff will be successful on the merits of its claim for injunctive relief. *Michalowski v. Head*, No. CV-10-278-B-W, 2010 WL 2757359, at *2 (D. Me. July 12, 2010).

> Named after the seminal 1971 case *Younger v. Harris*, the *Younger* abstention doctrine arises from strong policies counseling against the exercise of jurisdiction where particular kinds of state proceedings have already been commenced. In the absence of extraordinary circumstances, interests in comity and the respect for state processes demand that federal courts should abstain from interfering with ongoing state judicial proceedings. Although initially applied to protect state criminal prosecutions against interference, the *Younger* doctrine has been extended to "coercive" civil cases involving the state and to comparable state administrative proceedings that are quasi-judicial in character and implicate important state interests.
>
> *Younger* abstention is mandatory, not discretionary, when the federal lawsuit would interfere:

> (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge.
>
> *Rossi v. Gemma*, 489 F.3d 26, 34-35 (1st Cir. 2007).
>
> Abstention may be inappropriate only in certain "extraordinary circumstances":
>> Extraordinary circumstances include those situations in which core constitutional value[s] are threatened during an ongoing state proceeding and there is a showing of irreparable harm that is both great and immediate. Among those extraordinary circumstances are cases in which extreme bias completely renders a state adjudicator incompetent and inflicts irreparable harm upon the petitioner.
>
> *Esso [Standard Oil Co. v. Lopez-Freytes*, 522 F.3d 136,] 143 [1st Cir. 2008]; *Christian Action Network v. State of Maine*, 679 F.Supp.2d 140, [145] (D. Me. 2010) (stating that "[e]xtraordinary circumstances include bad faith, harassment and extreme bias; great and immediate irreparable harm to core constitutional values").

*Id.* at *3 (some citations and internal punctuation omitted).

The question presented, therefore, is whether the *Younger* doctrine applies when the state proceeding at issue is based on state statutes and/or regulations that are clearly preempted by federal law. The answer to that question, while it is close, is "no."

The First Circuit "recognize[s] an exception to abstention where preemption is facially conclusive." *Colonial Life & Accident Ins. Co.*, 572 F.3d 22, 26 (1st Cir. 2009) (citation and internal punctuation omitted). The First Circuit also recognizes that the Supreme Court has said that "merely showing a substantial claim of federal pre-emption is not enough," and that "what requires further factual inquiry can hardly be deemed flagrantly unlawful for purposes of a threshold abstention determination." *Id.* at 27 (citation and internal punctuation omitted).[4] No

---

[4] Contrary to the defendants' assertion, Defendants Mila Kofman's and Maine Bureau of Insurance's Com[b]in[]ed Reply Memorandum of Law in Further Support of Their Motions to Dismiss the Complaint ("Defendants' Reply") (Docket No. 26) at 3 n.3, the plaintiff does not "suggest[] that resolution of [its motion for a preliminary injunction] will require an 'adversarial presentation of evidence[]'" at page 3 of its reply memorandum with respect to that motion. All that the plaintiff says there is "[*t*]*o the extent some of the issues concerning the impact of the State's*

further factual inquiry is necessary in this case, and I have concluded that the claim of federal preemption in this case is not merely substantial, but is conclusive, on the face of the statutes involved.

> Federal courts seek to avoid needless conflict with state agencies and withhold relief by way of injunction where state remedies are available and adequate. But where Congress, acting within its constitutional authority, has vested a federal agency with exclusive jurisdiction over a subject matter and the intrusion of a state would result in a conflict of functions, the federal court may enjoin the state proceeding in order to preserve the federal right.

*Chaulk Servs., Inc. v. Massachusetts Comm'n Against Discrimination*, 70 F.3d 1361, 1369 (1st Cir. 1995) (citations omitted). "A number of courts have held that *Younger* abstention is inappropriate where a claim of preemption is 'facially conclusive' or 'readily apparent,' because no significant state interests are served when it is clear that the state tribunal is acting beyond the lawful limits of its authority." *Id*. at 1370. That is the case here.

Nothing in *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350 (1989), cited by the defendants for the proposition that "even a 'quick look' at the merits" of the plaintiff's preemption claim is prohibited here, Defendants' Reply at 3, requires a different outcome. That case involved state regulation of utilities, "one of the most important of the functions traditionally associated with the police power of the States[,]" 491 U.S. at 365 (citation omitted), while this case involves regulation of private insurance plans supplementing the federal Medicare program, not a subject traditionally associated with the police power of state government.

---

*regulations and enforcement action on Congress's carve-out of an explicitly preempted area are factual issues*, or mixed issues of law and fact, AHP notes that the instant motion is for preliminary injunctive relief, not for a temporary restraining order, and that this briefing is taking place in advance of an adversarial presentation of evidence." Plaintiff's Reply to Defendant's Objection to Plaintiff's Motion for Preliminary Injunction (Docket No. 13) at 3 (emphasis added). I have concluded, without the need for factual evidence, that the Maine statute at issue is preempted by federal law.

13

The court need not abstain in this case.[5]

## 2. Irreparable Injury

The plaintiff contends only that it will be irreparably injured in the administrative proceeding now pending before the defendants by the threatened enforcement of the preempted state law. PI Motion at 11. The defendants respond that the plaintiff cannot establish irreparable harm because it "has a full opportunity to raise its preemption claim in the adjudicatory hearing, and to appeal any adverse determinations to the state courts." Motion to Dismiss at 19. Of course, that "opportunity" involves the full administrative proceeding, however long that may take, and a later trip through state court.

"A party may be irreparably injured in the face of the threatened enforcement of a preempted law." *Villas at Parkside Partners v. City of Farmers Branch*, 577 F.Supp.2d 858, 878 (N.D. Tex. 2008) (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992)); *see also Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010). Here, while no deprivation of a constitutional right is alleged, the defendants have gone beyond threatening to enforce the state statutory terms that I have found to be preempted; an administrative enforcement proceeding is underway.

The defendants cite *Michalowski* for the proposition that the opportunity to raise a federal constitutional due process challenge before a state administrative board "mitigate[s a] claim of 'irreparable harm[,]'" Motion to Dismiss at 19-20, but Chief Judge Woodcock found in that case

---

[5] The defendants also contend in their motion to dismiss that this action is barred by the doctrine of sovereign immunity. Motion to Dismiss at 18-19. Since that motion was filed, the plaintiff has filed an amended complaint adding Superintendent Kofman as a defendant. Docket No. 12. The plaintiff contends that this addition renders the immunity argument moot. Plaintiff's Objection to Defendant[s'] Motion to Dismiss (Docket No. 16) at 12. I agree, as to the Bureau. *See Ramirez v. Puerto Rico Fire Serv.*, 715 F.2d 694, 697 (1st Cir. 1983). At oral argument, held on November 23, 2010, counsel for the plaintiff did not oppose dismissal of the Bureau as a party on this basis, and I recommend that its motion to dismiss be granted.

that, even with this opportunity, the irreparable harm factor "slightly favor[ed]" the plaintiff. 2010 WL 2757359 at *9. The same is true in the instant case.

### 3. Balance of Harms

The defendants assert in conclusory fashion that "the balance of harms favors the Bureau, as a federal injunction would disrupt an ongoing state adjudicatory proceeding – the very sort of harm that *Younger* abstention seeks to avoid." Motion to Dismiss at 20.[6] I have already discussed the reasons why *Younger* abstention is not appropriate in this case. The identical argument was made by a Maine state agency in *Michalowski*, where Chief Judge Woodcock found that this factor nonetheless "slightly favors Dr. Michalowski." 2010 WL 2757359 at *9. The harm to the plaintiff if the state adjudicatory process proceeds, possibly followed by a state court review, includes unrecoverable costs and potential damage to its reputation, while the harm to the defendants from the delay imposed by a federal injunction, even if the defendants ultimately prevail, is minimal. This factor favors the plaintiff.

### 4. Public Interest

The defendants assert that "the public has a strong interest in the enforcement of Maine's insurance laws, particularly those intended to protect consumers from deceptive marketing practices." Motion to Dismiss at 20. That is undoubtedly true, but the analysis does not stop there. The public also has a strong interest in ensuring that state laws and regulations preempted

---

[6] At oral argument, when asked what harm would be caused to the defendants if this court granted the requested injunctive relief, the defendants' attorney asserted that the failure to hold the plaintiff liable in the pending administrative action would harm the Bureau's ability to prevent harm to Maine consumers from insurance producers, but he also stated during oral argument that the Bureau is proceeding against the licenses of the particular producers involved in this case and plans to consolidate that proceeding with the one pending against the plaintiff. Clearly, the state is not deprived of its ability to protect consumers if it can still proceed directly against the individuals who are alleged to be actually violating the state's laws or regulations. The defendants' attorney also argued that the state must be allowed to proceed indirectly against insurers for the actions of their producers because the plaintiff alone has 250 producers in Maine and the Bureau cannot possibly police all individual producers given its limited financial resources. The financial capacities of state regulatory agencies is not a fact that can or should be considered in the preemption or injunctive relief analysis. I note that other state agencies with limited resources are expected to govern large numbers of licensed professionals. *See, e.g.,* 32 M.R.S.A. §§ 2151, 2153-A (State Board of Nursing); 2273, 2286 (Board of Occupational Therapy Practice); 3263, 3269 (Board of Licensure in Medicine).

15

by federal law are not enforced, particularly at the expense of those regulated by the federal law in question. Where Congress has expressly preempted the state law at issue, Congress has already determined that it is the preempting federal law that serves the public interest. *Med-Trans Corp. v. Benton*, 581 F.Supp.2d 721, 743 (E.D.N.C. 2008). *See also Bank One v. Guttau*, 190 F.3d 844, 847-48 (8th Cir. 1999) ("If [the plaintiff] proves that the relevant provisions of the [state law] are preempted by the [federal law] and that it will suffer irreparable harm if the State is not enjoined from enforcing those provisions, then the question of harm to the State and the matter of the public interest drop from the case, for [the plaintiff] will be entitled to injunctive relief no matter what the harm to the State, and the public interest will perforce be served by enjoining the enforcement of the invalid provisions of state law.").

### B. The Motion to Dismiss

Because the superintendent's motion to dismiss is based on the same arguments that she raises in opposition to the plaintiff's motion for a preliminary injunction, it should be denied for the reasons set forth above.

### IV. Conclusion

For the foregoing reasons, I recommend that the plaintiff's motion for a preliminary injunction be **GRANTED** and the defendants' motion to dismiss be **DENIED** as to the superintendent and **GRANTED** as to the Bureau.

The plaintiff asks that it not be required to post a bond as a condition of the issuance of a preliminary injunction. PI Motion at 13-14. That request should be left to the discretion of Judge Singal, should he decide to adopt this recommended decision.

## NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 14th day of December, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge